Haight, J.
The respondent is the wife of Edwin Burley, a son of Gardner Burley, deceased. She presented a claim to the executor of the deceased for services rendered in nursing and caring for him during his sickness, from June 3d, 1880, until November 1st, 1881. This claim was rejected by the executor and the same was duly referred under the statute, to a referee who found in favor of the plaintiff for the sum of $325.
It appears from the evidence that Edwin Burley and his wife, the plaintiff, occupied the farm of the deceased, working the same upon shares, he living with them. That on the third day of June, 1880, he had a sunstroke, or was overcome with heat; that sickness followed, and the evidence on the part of the plaintiff tends to show that thereafter he suffered much pain and was irritable, requiring considerable attention, and that the plaintiff cared for him as a nurse during the time mentioned in her claim.
The referee has found as a fact that these services were rendered by her under an express contract to pay her for the services.
Whilst the evidence on this branch of the case is not very satisfactory, it is of that character in which we cannot say *589 that the finding is against the evidence. For if the referee believed the testimony of the witnesses who speak upon the subject, taken in connection with references that may properly be drawn from the circumstances of the case, there was sufficient evidence to support the finding.
As to the question whether the plaintiff can recover for. these services, a more difficult question-is presented, for it is undisputed that, at the time the services were performed, she was living with her husband upon the farm doing the ordinary household labors of a wife having no separate estate or business. Under the provisions of section 2, chap 90 of the Laws of 1860, “A married woman is authorized to perform labor or services and have the earnings for her sole and separate property. ” This provision, however, is not understood as wholly abrogating the rule of the common law entitling the husband to the services and earnings of the wife. She may still allow him to claim and appropriate the fruits of her labor, and in the absence of an election on her part to labor on her account, or of circumstances showing her intention to avail herself of the privilege conferred by the statute, the husband’s common law light is unaffected. It consequently became a question of fact to be determined by the referee as to whether the services performed by her in taking care of her father-in-law, was understood at the time by the parties to the agreement that the compensation was to be paid to her for her separate use and property, and this fact had to be determined from the facts and circumstances of the case.
In the case of Birkbeck v. Ackroyd (74 N. Y., 356, 359), Andrews, J, in delivering the opinion of the court, clearly states the rule. He says, “When the question arises as to the right of a husband to recover for the labor and services of the wife, it must be determined upon the facts and circumstances of the case. When the labor is performed under the contract with the wife, and by the contract payment is to be made to her, the inference would be strong if not conclusive of her intention to avail herself of the protection of the statute.
So, where the wife is living apart from her husband or is compelled to labor for her own support, or the conduct and habits of the husband are such as to make it necessary for her protection that she should control the proceeds of her labor, the jury might well' infer that her labor was performed on her separate account; but where the husband and wife are living together and mutually engaged in providing for the support of themselves and their family, each contributing by his or her labor to the promotion of a common purpose, and there is nothing to indicate an intention on the part of the wife to separate her earnings *590 from those of her husband, her earnings in that case belong, we think, as at common law, to the husband, and he may maintain an action in his own right to recover them.
As to this question the evidence is somewhat meagre. The plaintiff was living with her husband and mutually engaged in providing for the support of themselves and their family, each contributing by his or her labor to the promotion of a common purpose. But it appears that two or three years prior to the sickness of Gardner Burley, her husband had told her that she might have whatever his father would pay her for taking care of him. It further appears that at times he was irritable, and that" they did not get along well together, and that she threatened to leave on that account, and that on one occasion, two or three years before his sickness, the deceased was talking with the plaintiff about her staying, and that she said to him that “It would be of no use; she could not get along with him.” He said, “You go on and do the work as. you have done, and I will pay for what you have done and what you shah do.” And again, on another occasion the deceased came to the barn and saw Edwin and wanted him to go to the house and induce the plaintiff to stay. “He said if she would stay he would pay her for it. He said she was determined to leave. He said she was packing up her trunk.” It further appears that Edwin went to the house, had a conversation with her, told her that if she would stay his father would pay her; that she still refused to stay, and that he went back to the barn and so reported to his father, that thereupon his father went to the house himself and she staid, unpacked the things and went to doing the work again. This evidence appears from the testimony of Edwin Burley.
It further appears from the testimony of Charles Miller, who was working for Burley upon the farm, that on one occasion he heard a conversation between Mary and Gardner Burley at noon time when he came in to dinner; that Gardner Burley said to her that he would pay her for the trouble she had; that he heard her say that she would stay; that he was crying and begging her to stay, and he would pay her for her trouble. If this evidence is to be believed, the promise was to pay her, and on the occasion that the deceased went to the barn and saw the plaintiff’s husband, he commissioned the husband to say to her that if she would stay he would pay her for it, and that the husband so stated to her at the house in the interview that he had with her by direction of his father. So, that, whilst the plaintiff and her husband were living together under the circumstances detailed, there were some circumstances indicating an intention on the part of the wife to separate *591 her earnings from those of her husband, which, taken in connection with the promise of the deceased to pay her for her labor, incline us to the opinion that the referee was justified in finding that sti.e was entitled to maintain the action.
The claim of the plaintiff was not derived through her husband. It is for services which she performed for the deceased, on her sole and separate account, which she had the right to do under the statute, and consequently Edwin Burley was not an interested party; and prohibited from testifying under section 829 of the Code of Civil Procedure.
It is contended that errors were committed in receiving the testimony of Dr. Doane; that the same was incompetent under section 834 of the Code, which provides that a person duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, which was necessary to enable him to act in that capacity. The doctor was sworn as a witness, and testified that he began treating the deceased in 1879, or the fore part of 1880, during his first sickness; that he treated him for some time while he was living at Edwin Burley’s; that from 1880 down he often saw him when he was not attending him as a physician. He was then questioned as to whether he observed him during the time when he was not attending him as a physician. He answered that he did, and observed his condition.
This and other answers of a similar nature were taken under objection, but it will be observed that the answers only go to the observations made of the outward, visible facts that were seen by him on these occasions when he was not attending as a physician and which were open and visible to the sight of any person. In none of them do the answers disclose any information which was acquired by him whilst attending in a professional capacity, and the evidence consequently was not brought within the provisions of the section of the Code referred to. Eddington v. Ætna Ins. Co., 77 N. Y., 564-576.
But, again, he was asked what was the value of the services of a nurse in taking care of Gardner Burley in the condition he was in. This was objected to; the objection overruled and exception taken. It will be observed that this question was not confined to the condition of the man as seen by him during the period that he was not treating him professionally, and it might possibly be inferred that the question called for the judgment of the witness as to the value of the services of a nurse taking into consideration the condition of the patient as that condition had been *592 disclosed by treating him as a physician. If so, there might be some doubt about the propriety of the question, but the witness did not,- in his answer, give the value of the services called for. His answer, in substance, was to the effect that he could not answer the question, for the reason that he had not seen the deceased on consecutive days, on many occasions, and could not tell how much it was worth, but stated that, as a general rule, where a nurse was required it was worth from five to ten dollars per week; some weeks it was worth five and some weeks ten, and so on, so that the answer, as we understand it, was only given as to the general rule and was not confined to this particular case. Consequently the exception taken to the ruling does not become the basis of any error.
Sarah Shell was undoubtedly a competent witness for the defendant, although she was an interested person. She was sworn on behalf of the executor, not against him, and was not disqualified under section 829 of the Code of Civil Procedure; but the question as to whether she had washed the curtains or, on some, occasion, made up the bed of the deceased, was not an issue in the case and was so immaterial and unimportant that no new trial should be granted on account thereof. She was also a competent witness to testify as to what it was reasonably worth to take care of an old man’s room, do his mending and washing, by the wife of the tenant working the farm; but the referee has held and decided that the plaintiff was entitled to recover nothing by reason of this service, and consequently the exclusion of the evidence did the defendant no harm. No other questions appear which we consider it necessary to discuss.
The judgment should be affirmed, with costs of this appeal payable out of the estate.
Smith, P. J., and Bradley, J , concur.